UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

AUDIE CRAIG SINGLETARY,

          Petitioner,

-vs-                                            Case No. 2:07-cv-611-FtM-33SPC

UNITED STATES OF AMERICA,

          Respondent.
_____/

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This matter comes before the Court on the Petitioner Audie Craig Singletary's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct the Petitioner's Sentence by a Person in Federal Custody (Doc. #1) and the Petitioner's Memorandum in Support of Motion 28 U.S.C. § 2255 (Doc. #2) filed on September 19, 2007. The Respondent United States filed its Answer in Opposition to Petitioner's Motion to Vacate, Set Aside, or Correct Sentence, Pursuant to 28 U.S.C. § 2255 (Doc. #11) on November 15, 2007. The Petitioner filed the Petitioner's Reply To the United States' Response to Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Doc. #12) on November 20, 2008. On April 17, 2009, the Honorable Virginia M. Hernandez-Covington entered an Order (Doc. #13) referring this matter to the undersigned United States Magistrate Judge for a report and recommendation. A hearing was set before the undersigned on June 16, 2009.

At the hearing on June 16, 2009, Petitioner was present and represented by Attorney Charles A. Murray. The Petitioner was called to testify during the course of the hearing. Petitioner called

one additional witness, Marlene Santonastaso, whose testimony was incorporated by reference from the 2255 hearing of Charles Keith Singletary, 07-cv-546-33SPC, held on the same date. The Government was represented by Assistant United States Attorney James C. Preston, Jr. The Government called as a witness, Thomas H. Ostrander, Esq.

## EVIDENCE AND TESTIMONY

**Audie Craig Singletary (Petitioner)** (Tr. 4-30)

Petitioner is currently incarcerated in Coleman, Florida, and has been for 40 months. (Tr. 4:12-15). Petitioner was indicted on March 15, 2005. (Tr. 6:24-25). His trial Counsel was Thomas Ostrander (Atty. Ostrander). (Tr. 4:16-17). As such, he advised Petitioner on the sentence he was facing. (Tr. 4:18-20). Petitioner testified that he was told he would be facing ten (10) years by Atty. Ostrander and five (5) years by the DEA, if he cooperated. (Tr. 4:21-25, 5:1-7). Petitioner went for a debriefing with the DEA where he told them about the loads and jobs he worked involving cocaine. (Tr.5:8-21). Petitioner testified to being the offloader and lookout. (Tr. 5:22-23) The date of the last load he worked on was in late 1998 or early 1999, as best he can recall. (Tr. 5:24-25, 6:1-2). Petitioner testified that he was employed by Darrell Taylor (Taylor), both in the construction business and the importation business. (Tr. 6:5-6) He went in to give Taylor his two weeks notice to quit work and begin working for himself, but Taylor fired him. (Tr. 6:7-10). Petitioner indicates he did not participate in any importation after the beginning of '99. (Tr. 6:21-23).

After being indicted, Petitioner states he was advised to plead guilty by his attorney because he was facing a ten year sentence. (Tr. 7:7-8). Petitioner testified that Atty. Ostrander never advised him of the possibility of more than ten years. (Tr. 7:14-16). He states Atty. Ostrander did not discuss the statute of limitations, but rather he found out about them after he was incarcerated.

(Tr. 7:23-25, 8:1-6). He further states that Atty. Ostrander did not object to the career offender enhancement during sentencing. (Tr. 8:14-17). He testifies that he was told he would get a more lenient sentence by the DEA but that he was not told that by his attorney. (Tr. 8:18-25).

At sentencing, two criminal points were added because Petitioner was on probation and Counsel did not object. (Tr. 9:1-6). Petitioner believed they couldn't prove, or "they didn't know what he was on, when the jobs were brought in, load were brought in". (Tr. 9:8-12). He states Counsel did not discuss other options with him. (Tr. 9:13-15). He does not recall to the best of his knowledge whether Atty. Ostrander spoke to any witnesses. (Tr. 9:16-18). Counsel did not hire an investigator but rather had someone who specialized in PSI's and never told Petitioner why he did not pursue it. (Tr. 9:19-23). Petitioner was indicted on the importation of five kilos or more. (Tr. 10:4-6). Petitioner stated that during sentencing he was charged with importing 150 kilos or more and Counsel did not object on the basis that it was not submitted to a jury or admitted. (Tr. 10:7-9). There were no other motions made, other than for continuance. (Tr. 10:16-18). Petitioner stated he was aware his Counsel represented a co-conspirator but was unaware the co-conspirator was cooperating with the Government. (Tr.10:19-22). If he was aware of this, he states he would not have kept him as his attorney. (Tr. 10:23-25). He knew the individual Atty. Ostrander was representing was Farrell Keith Hall. (Tr. 11:1-5). The issue of minor participant was not discussed and two minutes before sentencing the minimum mandatory sentence was brought up. (Tr. 11:10-12). Petitioner states the DEA promised a sentence of five years. (Tr. 10:20-23). He was told his sentence would not be enhanced in any way. (Tr. 10:24-25). Mr. Preston brought the issue up during Petitioner's change of plea hearing stating he heard from the U.S. Attorney's office not to enhance this case in any way. (Tr. 12:3-8). Petitioner states Mr. Preston indicated he was satisfied

3

with the ten year sentence and that he would not seek more than ten years for him and his brother because they were minor participants. (Tr. 12:9-12).

Petitioner testified to having an altercation with Darrell Taylor about Petitioner going into business for himself and quitting him. (Tr. 12:13-23). Taylor said he didn't need to give notice or quit, he was fired right then which ended their relationship. (Tr. 12:23-25). Petitioner states there is an affidavit from a co-defendant, Nevin McLaren, that states while at a fishing tournament with Mr. Taylor in '99, he informed him that he would no longer be involved in anything they had to do or would be doing. (Tr. 13:6-10). The affidavit was brought to Court by the Petitioner's wife. (Tr. 17:25, 18:1-5). It was the first time Petitioner's Counsel saw the affidavit. ( Tr, 18:6-8). The affidavit was entered as Petitioner's Exhibit #1. (Tr. 14:21-22). Petitioner testified Mr. McLaren came to him while in Coleman prison and told him this information. (Tr. 18:12-21).

Petitioner does not feel his plea was knowing, voluntary and intelligently made because he thought he was receiving a ten year sentence. (Tr. 15: 4-6, 15:23-25, 16:1-3). Petitioner testified he was never told about the statute of limitations and he would not have pled guilty if it were discussed. (Tr. 14:14-18).

On cross examination, Petitioner testified that the Court discussed the potential penalties at the first hearing and that was when five years was brought up. (Tr. 16:11-18). As a result, those proceedings were promptly concluded. (Tr.16:19-20). During the second hearing, Petitioner understood there were no side promises that carried any weight. (Tr. 16:21-24). He testified he understood when the Court told him he was facing ten years, minimum mandatory, up to a term of life imprisonment. (Tr.17:2-5). The Magistrate Judge explained there were no other promises and Petitioner entered the plea. (Tr. 17:14-17).

Petitioner testified to having communications with Darrell Taylor after he stopped working for him. (Tr. 19:22-23). He stated Mr. Taylor called him and told him to come over. (Tr. 19:23-24). When Petitioner arrived, he was told to get in the truck and go for a ride. (Tr. 19:24-25). Mr. Taylor pulled out a pistol and sat it on the seat. (Tr. 20:1-2). He said Petitioner was the snitch in this case and said if you want to shoot me, take my gun and shoot me. (Tr. 20: 2-3). Petitioner is related to Mr. Taylor because he is married to his cousin. (Tr. 20:20:11-15). Petitioner states that it was quite some time before they spoke again after being fired and they did not haul anymore cocaine together. (Tr. 20:23-25).

**Marlene Marie Santonastaso (Santonastaso)**

Marlene Santonastaso appeared and testified in the 2255 hearing (07-cv-546) for Charles Keith Singletary. (Tr. 15-20). During the hearing, Counsel stipulated that the testimony of Santonastaso from the hearing for Charles Singletary should be incorporated by reference into this hearing. The summary of that testimony is as follows:

Santonastaso is currently employed as a waitress at the Saw Grass Grill. (Doc. #27, 15:15-18). She was previously employed at BRB Site Development in 1999, as an independent contractor and was subsequently placed on the payroll. (Doc. #27, 15:19-25, 16:1). Santonastaso worked as a secretary doing accounts receivable, accounts payable, and payroll. (Doc. # 27, 16: 23-24). The payroll was prepared weekly. (Doc. #27, 17:10-12). Santonastaso did not prepare a check for the Petitioner and his brother because they were no longer employed with the company. (Doc. #27, 17:13-18). Records indicated they were fired in the beginning of 1999. (Doc. #27, 17:19-23). Santonastaso could not remember the exact date when their employment was terminated. (Doc. #27, 18:7-8). She did not know anything about participation in a conspiracy or activities relating to drugs,

5

specifically cocaine. (Doc. #27, 18:9-11). Santonastaso knew the Petitioner and his brother were related by marriage to Darrell Taylor. (Doc. #27, 18:12-19). She did not know about their relationship as it related to the importation of cocaine. (Doc. #27, 26:23-25, 27:1-5). Santonastaso knew the Petitioner and his brother since she was a teenager. (Doc. #27, 19:10-12). She stated she only knew about the site development work, which involved a partnership. (Doc. #27, 19: 20-21). The Petitioner and his brother were promised a larger percentage than they were receiving which caused the falling out and eventual split. (Doc. #27, 19:25, 20:1-3)

**Thomas H. Ostrander, Esq.** (Tr. 31-47)

Thomas H. Ostrander represented Audie Craig Singletary in criminal case 2:05-cr-21. (Tr. 31:23-25, 32:1). Atty. Ostrander was not aware of the overall conspiracy when he initially became involved in the case. (Tr. 32:6-9). Atty. Ostrander realized he was familiar with the conspirator - conspiracy Petitioner was involved in from prior representation since he had previously represented Farrell Hall. (Tr. 32:9-14). He advised the Court and the Petitioner of this prior representation in case Petitioner felt it would put him in conflict. (Tr. 32:15-22). If Petitioner decided not to plead and had gone to trial and Farrell Hall was listed as a witness, Atty. Ostrander would have had to withdraw. (Tr. 32:23-25, 33:1-14). Atty. Ostrander discussed the issue of withdrawal and the Petitioner's response was to accept his representation. (Tr. 33:4-9) He was comfortable Mr. Hall would not be testifying against him and was not part of the case, and Petitioner accepted that. (Tr. 33:9-11). If the situation changed, then Atty. Ostrander would have withdrawn. (Tr. 33:12-14). Based upon his earlier review of the case, Atty. Ostrander had a working knowledge of the length and scope of the conspiracy and the number of loads involved. (Tr. 33:15-19). Initial conversations with the Petitioner, after receiving the indictment, involved pleading or potentially pleading to the

charges. (Tr. 33:22-25, 34:1). Atty. Ostrander felt after the Petitioner had been fully debriefed, they weren't left many options. (Tr. 34:4-8). He understood Petitioner had already cooperated with law enforcement. (Tr. 34:12-14). Petitioner told him he met with law enforcement probably a year or two years prior to the indictment and had been providing them with what he believed to be truthful information and was just waiting for the indictment. (Tr. 34:16-20).

Subsequently, Atty. Ostrander received a written plea agreement and met with the Petitioner to discuss the content. (Tr. 35:6-11). He indicated he mailed the agreement to the Petitioner and would answer questions he had. (Tr. 35:17-18). He met the Petitioner and his brother at a restaurant in Immokalee where Petitioner executed the plea agreement. (Tr. 35:19-21). Atty. Ostrander indicated he read through every paragraph and tried to summarize it and provided examples of what it meant. (Tr. 36:1-4). He discussed the waiver of appeal provision with the Petitioner. (Tr.36:5-7).

Atty. Ostrander represented Petitioner at the plea hearing which started off uncontroversial until Petitioner mentioned a promise of a five year sentence by law enforcement. (Tr. 36:13-17). Atty. Ostrander testified it was the first time he heard that from the Petitioner. (Tr. 36:18-20). As a result, the plea was continued so the issue could be discussed to determine if the plea was knowingly and willfully made and not based on a misunderstanding. (Tr. 36:20-25). The hearing was recessed and later rescheduled. (Tr. 37:1-4). In between hearings, Atty. Ostrander discussed with Petitioner the five year interpretation he had. (Tr. 37:5-10). He advised Petitioner that he spoke with the Government and talked to the agent to determine their recollection. (Tr.37-12-14). They advised him that no promises were made other than what was in the plea agreement and the agent explained that they would utilize the information they received and if it came to anything, they would recommend Petitioner be given some benefit. (Tr. 37: 16-21). During the hearing, Magistrate Judge

7

Frazier told the Petitioner that he didn't know who told him that but anyone who did was blowing smoke. (Tr. 37:24-25, 38:1-4). Atty .Ostrander advised Petitioner at that point that if he wanted to go to trial, he was sure the Judge would allow him to withdraw the plea. (Tr. 38:9-14). He warned Petitioner of the risk of a more significant sentence. (Tr. 38:13-14). Petitioner agreed to move forward with the plea. (Tr. 38:16). Atty. Ostrander wasn't sure if the provision regarding sentence enhancement meant as much to Petitioner as the fact he felt there was a promise not kept. (Tr. 38:17-25, 39:1-2). Despite that feeling, Petitioner agreed to plead in the second hearing. (Tr. 39:5-8).

At no point did Atty. Ostrander consider a Motion to Dismiss based on the statute of limitations. (Tr. 39:11-13). He testified that based upon his conversations with the Petitioner, and reviewing the indictment and discovery, it didn't appear that the conspiracy ended until 2001. (Tr. 39:15-20). Therefore, there was no statute of limitations problem. (Tr. 39:22). It was Atty. Ostrander's intention and goal in negotiations with the Government to receive the best possible agreement on behalf of his client. (Tr. 40:8-11). At the time of sentencing, Atty. Ostrander advised the Court on how it would be fruitless to ask for a role reduction because of the minimum mandatory. (Tr. 40:12-15).

On cross examination, Atty. Ostrander testified he did not hire an investigator because it was their intention to plead guilty and there was nothing in the information provided to suggest an investigator was necessary. (Tr. 41:6-14). Atty. Ostrander further testified he never interviewed Nevin McLaren, having never heard of him. (Tr. 42: 19-20). Atty. Ostrander stated Mr. Hall never mentioned the Petitioner's name to anybody therefore, there was no reason to talk to him. (Tr. 43:4-9). In order to determine the best option was to plead guilty, Atty. Ostrander stated he met with Petitioner and his wife, reviewed all the discovery, and spoke to the agent and prosecutor. (Tr. 44:4-

8

10). His opinion was that, in a literal sense, Petitioner withdrew from the conspiracy after the last participation, but in a legal sense, he never withdrew. (Tr.44:25, 45:1-4). Atty. Ostrander did call an expert for advice on the career offender portion of the PSR and confirmed his own conclusion. (Tr. 46:9-15).

## DISCUSSION

There are four grounds for attacking a sentence pursuant to 28 U.S.C. § 2255: first, if it was imposed in violation of the Constitution or laws of the United States; second, if it was imposed without jurisdiction; third, if it was imposed in excess of the maximum authorized by law; and finally, if it is otherwise subject to collateral attack. U.S. v. Walker, 198 F.3d 811, 813 n. 5 (11th Cir. 1999). The Petitioner alleges three (3) grounds in his Motion: (1) Ineffective assistance of counsel to advise him during the plea negotiations, thus, making his plea not entered into voluntarily and knowingly; (2) Ineffective assistance of counsel because his counsel labored under a conflict of interest; and (3) The Petitioner states counsel failed to argue the imposition of the career offender enhancement was done so in violation of the Petitioner's Fifth Amendment Right to due process of law.

The Plaintiff alleges ineffective assistance of counsel. Ineffective assistance of counsel is a cognizable claim under the terms of the statute. The Sixth Amendment of the Constitution guarantees criminal defendants the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). A convicted Defendant making a claim of ineffective assistance of counsel must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgement. Chateloin v. Singletary, 89 F.3d 749, 752 (11th Cir. 1996).

It is well settled that Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), is the controlling legal standard for determining ineffective assistance of counsel claims.

9

Haliburton, 342 F.3d at 1243. Strickland established a two pronged standard to determine whether or not counsel's assistance was ineffective. 466 U.S. at 687. First, the defendant must show that counsel's performance was so deficient that he was not performing as the "counsel" guaranteed by the Sixth Amendment. Id. Second, the defendant must show that counsels ineffective assistance prejudiced the defense to such a degree that the defendant was deprived of the right to a fair trial. Id. The defendant must satisfy both prongs to prove ineffective assistance of counsel. Id. Moreover, counsel owes a lesser duty to a client who pleads guilty than to one who goes to trial, and need only provide the client with an understanding of the law in relation to the facts in order that the client may make an informed and conscious choice between entering a guilty plea and going to trial. Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984).

Because the Court is reviewing the counsel's performance from hindsight, the Court must indulge a strong presumption that the counsel's conduct falls within a wide range of reasonable professional assistance. Id. at 689. The Petitioner bears the burden of overcoming the presumption that, his attorney provided competent and effective assistance of counsel in his defense. U.S. v. Cronic, 466 U.S. 648, 658, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984).

*(1) Whether Singletary's Plea was Entered as a Result of Ineffective Assistance of Counsel*

The Petitioner states that his counsel was ineffective because he agreed to enter the plea agreement because his counsel assured him that he would receive no more than ten (10) years incarceration if he would plead guilty. Secondly, the Petitioner claims his counsel was ineffective because he failed to argue the statute of limitations defense. As a result, the Petitioner states that his plea was no entered voluntarily and knowingly because he did not know the choices about the length of sentence nor about the statute of limitations defense. The Government responds that any claim

the Petitioner made about his counsel's advice regarding the length of his sentence was negated by the Court's direction that he faced up to life in prison for his offense, and further that he waived any direct or collateral attacks on his sentencing when he plead guilty.

"It is well settled that sentence-appeal waivers are valid if made knowingly and voluntarily." Furlow v. U.S., 2006 WL 1766520 * 2 (M.D. Fla. June 26, 2006) (citing Williams v. U.S., 396 F.3d 1340, 1341 (11th Cir.), *cert. denied,* 126 S. Ct. 746 (2005)). With regard to whether a sentence-appeal waiver included the waiver of the right to challenge the sentence collaterally in the context of a section 2255 motion, the Eleventh Circuit Court of Appeals in Williams held as follows: [E]very Circuit to have addressed the issue has held that a valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing. Furlow, 2006 WL 1766520 at * 2 (citing United States v. White, 307 F.3d 336, 341-44 (5th Cir. 2002); Garcia-Santos v. U.S., 273 F.3d 506, 508-09 (2nd Cir.2001); Davila v. U.S., 258 F.3d 448, 451-52 (6th Cir.2001); U.S. v. Cockerham, 237 F.3d 1179, 1183-87 (10th Cir.2001), *cert. denied,* 534 U.S. 1085, 122 S.Ct. 821, 151 L.Ed.2d 703 (2002); Mason v. U.S., 211 F.3d 1065, 1069-70 (7th Cir.2000), *cert. denied,* 531 U.S. 1175, 121 S. Ct. 1148, 148 L. Ed.2d 1010 (2001). The Eleventh Circuit stated that the foregoing consistent line of case law from its sister Circuits on this issue was persuasive, particularly since a contrary result would permit a defendant to circumvent the terms of the sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance, thus rendering the waiver meaningless. Furlow, 2006 WL 1766520 at * 2.

*(a) Whether the Petitioner Enter the Plea Voluntarily and Knowingly in Regards to His Sentence*

Initially, the Court notes that the Eleventh Circuit Court of Appeals held the Petitioner's plea

was entered voluntarily and knowingly and that he has waived his right to appeal his sentence either directly or collaterally. (Criminal, Doc. # 274). To be voluntary and knowing, (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; (3) the defendant must know and understand the consequences of his guilty plea. U.S. v. Mosley, 173 F.3d 1318, 1322 (11th Cir. 1999). At his guilty plea, the Petitioner was further informed that if at any time during the colloquy he needed to speak with his attorney, he could stop the proceedings and would be given the opportunity. (Criminal, Doc. # 110, 2:17-21). Judge Frazier then asked the Petitioner a series of questions to determine if he was competent to enter a plea of guilty. After asking of the Petitioner was taking any medications or drugs or if he had any physical impairments to that would prevent him from entering a plea, Judge Frazier found the Petitioner competent to enter a plea. (Criminal, Doc. # 110, 3-4). Judge Frazier asked the Petitioner if there had been any threats or coercion or improper pressure of any kind placed on the Defendant to make him plead guilty. (Criminal, Doc. # 110, 5:20-25). The Petitioner said "[n]o sir." (Criminal, Doc. # 110, 6:1).

While the Petitioner argues he had ineffective assistance of counsel because his counsel told him he would get only ten (10) years, the Court specifically asked the Petitioner if he understood that his attorney could not be specific as the guideline range in his case. (Criminal, Doc. # 110, 8:3-5). The Petitioner replied "[y]es sir." (Criminal, Doc. # 110, 8:5). The Court further informed the Petitioner that he could not withdraw his plea if his counsel's predictions about his sentence were inaccurate and that the Court would use the guidelines and could impose a sentence harsher than the guidelines recommended if necessary. (Criminal, Doc. # 110, 10:7-24). Again the Petitioner replied yes. (Criminal, Doc. # 110, 10:24). The Petitioner was informed that the terms of the agreement and no other promises or statements by any agents would effect the sentence he might receive. (Criminal,

12

Doc. # 110, 14:2-17). The Court continued that the count against the Petitioner d carried a mandatory minimum of ten (10) years up to life in prison. (Criminal, Doc. # 110, 10:25;11:1-6). The Petitioner acknowledged that he understood the consequences of his plea. (Criminal, Doc. # 110, 11:7).

The Court even postponed the plea colloquy when the Defendant stated that he had been offered incentives outside the terms of the plea agreement if he would plead guilty. The plea colloquy was reconvened on August 18, 2005, and again the Court asked the Defendant if anyone had made any verbal promises or representations which were not included in his plea agreement. (Criminal, Doc. # 154, 7:3-13). The Petitioner said after consulting with his counsel that he understood that any previous statements should have been written down, and that he would proceed with the plea colloquy. (Criminal, Doc. # 154, 7:14-17). Thus, the Petitioner was knowingly and voluntarily entering into the plea.

The Petitioner was well informed that any promises made regarding the length of his potential sentence were not valid and that the sentencing court would make that determination and could use the guidelines to impose a harsher sentence. The Petitioner stated that he clearly understood that his sentence would be imposed by the court irregardless of his counsel's estimates including up to life in prison, and yet he agreed to continue and enter a guilty plea. The Petitioner had a clear and thorough understanding that his sentence could exceed the ten (10) years even up to life in prison.

### (b) Whether Counsel was Ineffective Because He Failed to Argue or Investigate the Statute of Limitations

The Petitioner argues that he received ineffective assistance of counsel because Atty. Ostrander failed to investigate whether or not the statute of limitations had run on the charges against

13

him. As such, the Petitioner states that if an attorney fails to present an alternative to pleading guilty, especially an alternative based upon a viable defense, it would be hard to see how the plea could be valid.

No absolute duty exists to investigate a particular line of defense. Counsel's decision not to conduct an investigation need only be reasonable. Williamson v. Moore, 221 F.3d 1177, 1180 (11th Cir. 2000) (citing Strickland, 104 S.Ct. at 2066 ("[C]ounsel has a duty ... to make a reasonable decision that makes particular investigations unnecessary."). This Circuit has refused to conclude that tactics "can be considered reasonable only if they are preceded by a 'thorough investigation." Williamson, 221 F.3d at 1180 (citing Williams v Head, 185 F.3d 1223, 1236-1237 (11th Cir. 1999)). "The reasonableness of a counsel's performance is an objective inquiry." Chandler v. U.S., 218 F.3d 1305 (11th Cir.2000)(en banc); *see also* Darden v. Wainwright, 477 U.S. 168, 106 S. Ct. 2464, 2474, 91 L. Ed.2d 144 (1986) (noting that counsel's performance did not fall below "an objective standard of reasonableness"). The inquiry focuses on whether a reasonable attorney could have acted in the same manner as trial counsel did act at the trial. Chandler, 218 F.3d at 1315; *see also* Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir.1995) (*en banc*)("The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial ...").

At no point did Atty. Ostrander consider a Motion to Dismiss based on the statute of limitations. (Tr. 39:11-13). He testified that based upon his conversations with the Petitioner, and reviewing the indictment and discovery, it didn't appear that the conspiracy ended until 2001. (Tr. 39:15-20). "A conspiracy is deemed to have continued as long as the purposes of the conspiracy have

neither been abandoned nor accomplished and the defendant has not made an affirmative showing that the conspiracy has terminated. A defendant can overcome this presumption of continued participation only [by] showing that he affirmatively withdrew from the conspiracy or the final act in the furtherance of the conspiracy has occurred." U.S. v. Rodriquez, 2007 WL 3333483 * 2 (M.D. Fla. November 8, 2007) (citing U.S. v. Harriston, 329 F. 3d 779. 783 (11th Cir. 2003)). The Petitioner presented no affirmative acts to demonstrate his withdrawal from the conspiracy and therefore he remained a part of the conspiracy.

Therefore, Atty. Ostrander did not believe there was a statute of limitations problem. (Tr. 39:22). It was Atty. Ostrander's intention and goal in negotiations with the Government to receive the best possible agreement on behalf of his client. (Tr. 40:8-11). At the time of sentencing, Atty. Ostrander advised the Court on how it would be fruitless to ask for a role reduction because of the minimum mandatory. (Tr. 40:12-15).

The Petitioner was also fully informed that upon entering his plea that he was waving his right to appeal his sentence. (Criminal, Doc. # 110, 11:1-16). The Defendant stated that he understood that he was losing his right to appeal. (Criminal, Doc. # 110, 11:7). The Court notes that "there is a strong presumption of truth to statements made by [a] defendant during plea colloquy." U.S. v. Rubioo-Ledezma, 2006 WL 551317 * 2 (11th Cir. March 8, 2006) (citing U.S. v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994). The Court asked the Petitioner if he understood the possible penalties which would apply if he continued and entered a guilty plea. (Criminal, Doc. # 154, 13:12-15). The Petitioner stated that he understood the plea agreement and its terms that statements by his attorney or government agents could bind the Court in regards to the length of his sentence. Thus, the Petitioner entered knowingly and voluntarily into his plea and there was no ineffective assistance of

counsel regarding his understanding of the implications of the plea agreement.

A review of the record reveals that Petitioner voluntarily and knowingly entered into his guilty plea and that he understood the full significance of his waiver of collateral relief. *See* Giuliano v. U.S., 2008 WL 786813 * 3 (M.D. Fla. March 20,2008) (citing U.S. v. Weaver, 275 F.3d 1320, 1333 (11th Cir.2001) ("To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver."); U.S. v. Bushert, 997 F.2d 1343, 1352 (11th Cir.1993) ("[F]or a sentence appeal waiver to be knowing and voluntary, the district court must have engaged the defendant about the sentence appeal waiver during the Rule 11 hearing."). Therefore, with regard to the Petitioners sentence he effectively waived any appeal or challenge of the length of his sentence collaterally in the context of a section 2255 motion. Furlow, 2006 WL 1766520 at * 2 (citing White, 307 F.3d at 341-344).

The Petitioner was fully informed of his possible sentence and acknowledged he understood he could receive up to life in prison. Atty. Ostrander fully considered the statute of limitations defense and found it to be frivolous. Further, the Petitioner waived his right to appeal based upon the statute of limitations when he entered his guilty plea. Thus, it is respectfully recommended that the Petitioner's counsel was not ineffective in advising his client during the plea negotiations.

*(2) Whether the Petitioner Received Ineffective Assistance of Counsel because His Counsel Labored Under a Conflict of Interest*

The Petitioner states that he received ineffective assistance of counsel at the plea stage because Atty. Ostrander had a conflict of interest that prevented him form fully representing the Petitioner's interest. The Government argues that the Petitioner knew Atty. Ostrander had

represented Farrell Keith Hall, in this case. The Petitioner does not deny that he had previous knowledge that Atty. Ostrander represented Hall. Instead, the Petitioner argues that he did not have knowledge that Hall provided substantial assistance to the Government.

Atty. Ostrander did in fact represent Hall two (2) years prior to his representation of the Petitioner. At the hearing Atty. Ostrander testified that he was not aware of the overall conspiracy when he initially became involved in the Petitioner's case. (Tr. 32:6-9). Atty. Ostrander realized he was familiar with the conspirator - conspiracy Petitioner was involved in from prior representation since he had previously represented Farrell Hall. (Tr. 32:9-14) He advised the Court and the Petitioner of this prior representation in case Petitioner felt it would put him in conflict. (Tr. 32:15-22). If Petitioner decided not to plead and had gone to trial and Farrell Hall was listed as a witness, Atty. Ostrander would have had to withdraw. (Tr. 32:23-25, 33:1-4). Atty. Ostrander discussed the need to withdraw and the Petitioner's response was to accept his representation. (Tr. 33:4-9). Atty. Ostrander was comfortable Mr. Hall would not be testifying against the Petitioner and was not part of the case, and Petitioner accepted that. (Tr. 33:9-11). If the situation changed, then Atty. Ostrander would have withdrawn. (Tr. 33:12-14). However, Atty. Ostrander stated Mr. Hall never mentioned the Petitioner's name to anybody. (Tr. 43:4-9).

Furthermore, at his plea hearing, the Petitioner stated that he was satisfied with the services of his attorney. (Criminal, Doc. # 110, 5:10-12). Thus, based upon Atty. Ostrander's testimony that Hall never mentioned the Petitioner by name to anybody and the Petitioner's own comments that he was satisfied with his attorney the Court respectfully recommends that Atty. Ostrander did not suffer from a conflict of interest in representing the Petitioner.

*(3) Whether the Petitioner's Sixth Amendment Right to Effective Counsel was Denied at*

*Sentencing and on Appeal*

The Petitioner states his Fifth and Sixth Amendment rights were violated because the Court relied on the Sentencing Guidelines to impose his sentence without the benefit of a jury verdict to establish the Petitioners career criminal enhancements as required by Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L. Ed. 2d 435 (2000); Blakely v Washington, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004); and U.S. v. Booker, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005). Apprendi states that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. 530 U.S. at 488. The Government argues that the Defendant was not sentenced beyond the statutory maximum, which in this case, was life in prison, and therefore, there was no deviation from the guidelines based upon the petitioners career offender status.

The Petitioner argues that his past convictions were used to enhance his sentence without first being established as facts before a jury in compliance as directed by the Apprendi and Booker decisions. The Petitioner's argument lacks merit. Prior convictions are exempted from those facts that must be admitted or proved by a jury prior to sentencing. Apprendi, 530 U.S. at 490. Apprendi established, as a constitutional matter, that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Gilchrist v. U.S., 2007 WL 1796266 *2 (M.D. Fla. June 20, 2007) (citing Apprendi, 530 U.S. at 490). Thus, prior convictions are exempted from those facts that must be admitted or proved by a jury prior to sentencing. Apprendi, 530 U.S. at 490. In the drug context, "a district court's drug quantity findings and utilization of the § 841(b)(1)(A) and § 841(b)(1)(B) sentencing schemes in § 841 cases in no manner violate Apprendi unless the actual

18

sentence ultimately imposed exceeds the catchall maximum penalty in § 841(b) (1)(c)." Gilchrist, 2007 WL 1796266 at *2 (citing United States v. Sanchez, 269 F.3d 1250, 1279 (11th Cir.2001) (en banc), *cert. denied,* 535 U.S. 942, 122 S.Ct. 1327, 152 L.Ed.2d 234 (2002)).

Here, the maximum sentence the Petitioner could have received was life in prison. (Criminal, Doc. # 154, 11:4-6). The Petitioner acknowledged that he understood he could receive life under the guidelines if he pled guilty to the charges. (Criminal, Doc. # 154, 11:7). Thus, the Petitioner's sentence of 292 months did not exceed the maximum sentence under the guidelines. Neither did the Petitioner's past convictions have to be proved before a jury. It would have been frivolous for counsel to argue that the Petitioner's past convictions could not be used to enhance the Petitioners sentence. It is well established law that "[c]ounsel cannot be deemed to have performed deficiently by failing to address an issue that reasonably would have been considered to be without merit." Alvarez v. U.S., 2008 WL 619314 * 8 (M.D. Fla. March 4, 2008) (citing Davis v Singletary, 119 F.3d 1471, 1476 (11th Cir. 1997)). Thus, it is respectfully recommended that neither sentencing counsel nor appeals counsel acted ineffectively by failing to raise the Apprendi issues regarding the Petitioner's prior convictions.

## CONCLUSION

Based upon the testimony and evidence presented at the hearing the Court respectfully recommends that the Petitioner has failed to meet his burden under § 2255.

Accordingly, it is now

**RESPECTFULLY RECOMMENDED:**

The Petitioner Audie Craig Singletary's Motion Under 28 U.S.C. § 2255 to Vacate, Set

Aside, or Correct the Petitioner's Sentence by a Person in Federal Custody (Doc. #1) should be **DENIED.**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully Recommended** at Fort Myers, Florida, this 19th day of July, 2009.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: All Counsel of Record